## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACKIE TAYLOR and LINDA JO
HISEL,

      Plaintiffs,

v.

JAY ALLEN, M.D., in his official
capacity as Linn County, Kansas, Health
Director and THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF LINN, KANSAS,

      Defendants.

Case No.  2:20-cv-02238

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR RESTRAINING ORDER

Respectfully submitted,

**Case Linden P.C.**

s/ Kevin D. Case
Kevin D. Case, KS 14570
Patric S. Linden, KS 18305
Jennifer G. Ahlbrandt, KS 26980
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
patric.linden@caselinden.com
jennifer.ahlbrandt@caselinden.com
Attorneys for Defendants

## Table of Contents

I.    Nature of the Case. ..................................................................................................7

II.   Factual and Procedural Background. .......................................................................8

  A.    The Parties. ........................................................................................................8

  B.    The COVID-19 Pandemic. .................................................................................9

    1.    The Pandemic Presents An Extraordinary Danger Due To Its Rapid Spread And The

    Significant Risk of Severe Illness. ........................................................................9

    2.    COVID-19 In Linn County, Kansas....................................................................11

    3.    Contact Tracing. ................................................................................................14

III.  Issues Presented:....................................................................................................16

IV.   Arguments and Authorities....................................................................................16

  A.     Introduction....................................................................................................16

  B.     Preliminary Issues. ........................................................................................18

    1.    A TRO Cannot Be Granted Because Plaintiffs Lack Standing To Raise The

    Constitutional Challenge They Attempt To Assert. ..............................................18

    2.    Defendant Allen's Authority To Issue The May 1 Order. ............................21

  D.    Plaintiffs Have Not Met Their Burden To Establish A Right To A Restraining Order..27

    1.    Plaintiffs Have Failed To Offer Any Authority Demonstrating That The Mandate

    Requiring Certain Businesses To Collect Of Contact Information For "In-Store" Customers

    Violates Plaintiffs' Constitutional Rights. ...........................................................27

2.      The Exigencies Of The COVID-19 Pandemic Necessitate Requiring Businesses To Gather Customer Contact Information To Protect Public Health Via Contact Tracing And Notification. .................................................................................................................................32

E.      To The Extent, If Any, That Plaintiffs Have Standing With Regard To Requests for Customer Lists Maintained by Businesses Pursuant To The May 1 Order That Issue Is Readily Addressed By A Rational Construction Of The Relevant Provisions Of The Order. ................34

## Table of Authorities

**CASES**

*Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467 (S.D.N.Y. 2019) ......................................28

*Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)..................................28

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067 (10th Cir. 2009)..25

*Camara v. Mun. Court of City & County of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)................................................................................................................28

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 135 S. Ct. 2443, 192 L. Ed. 2d 435 (2015) ..18, 28, 29

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) .............................................................................10

*Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir. 1991) .......................................................22

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016)..............................................................................25

*Gallaher & Speck, Inc. v. Ford Motor Co.*, 226 F.2d 728 (7th Cir. 1955) ......................................9

*Gilbert v. Shalala*, 45 F.3d 1391 (10th Cir. 1995)..........................................................................19

*Gish v. Newsom*, No. EDCV 20-755 JGB (KKx), 2020 WL 1979970  (C.D. Cal. April 23, 2020)9

*Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S. Ct. 153, 75 L. Ed. 374 (1931).......28

*Gonzales v. Carhart*, 550 U.S. 124, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) ..........................31

*Hadley v. Kellogg Sales Company*, 273 F.Supp.3d 1052 (N.D. Cal. 2017) ....................................9

*Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564 (5th Cir. 2011)............................................11

*Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990)..........................17

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905) ........................................................................................................................... 22, 32

*Joe Flynn Rare Coins Inc. v. Stephan*, 526 F. Supp. 1275 (D. Kan. 1981) ....................................28

*Kannaday v. Ball*, 09-2255-JWL, 2010 WL 743055 (D. Kan. Feb. 25, 2010)...............................28

*Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) ............................20

*Liberty Coins, LLC v. Goodman*, 880 F.3d 274 (6th Cir. 2018)......................................................28

*Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. 2006) ............................................................................19

*Lopez v. Swaney*, 741 Fed. Appx. 486 (9th Cir. 2018)......................................................................10

*Miles v. D.C.*, 354 F. Supp. 577 (D.D.C. 1973)................................................................................32

*MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D. Mich. 2019) ...............................28

*Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52, 96 S. Ct. 2831, 49 L. Ed. 2d
    788 (1976)..................................................................................................................................29

*Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285 (D. Kan. 2018) ..........................................................24

*Rubin v. Archuleta*, No. 17-cv-00224-MSK, 2018 WL 1427208 (D. Co. Mar. 22, 2018) ............10

*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) ...................35

*Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir.2005) ...............................................................25

*See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967)...............................28

*Shane v. Buck*, 658 F. Supp. 908 (D. Utah 1985) ............................................................................30

*State ex rel. Anderson v. Fadely*, 180 Kan. 652, 308 P.2d 537 (1957) ...........................................23

*State of Louisiana v. State of Texas*, 20 S. Ct. 251, 44 L.Ed. 347 (1900).......................................22

*Tickets for Less, LLC v. Cypress Media, LLC*, No. 20-2047-JAR-GEB, 2020 WL 528449 (D.
    Kan. Feb. 3, 2020)....................................................................................................................25

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996)....................................................................11

*United States v. Gilliam*, 842 F.3d 801 (2d Cir. 2016).....................................................................32

*United States v. Harrison*, 653 F.2d 359........................................................................................ 19, 20

*United States v. Mercado-Nava*, 486 F. Supp. 2d 1271 (D. Kan. 2007).........................................20

*United States v. Miller*, 425 U.S. 435, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976).............................20

*United States v. Roe*, 421 Fed. Appx. 881 (10th Cir. 2011) ............................................................19

*United States v. Skowronski*, 827 F.2d 1414 (10th Cir. 1987)......................................................20

*Uribe v. Perez*, 5:17-00558 CJC (ADS), 2020 WL 1318358 (C.D. Cal. Mar. 3, 2020) ...............10

*Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) ...............................................30

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).....25

## STATUTES

K.S.A. § 65-110 ........................................................................................................................12

K.S.A. § 65-119 ................................................................................................................. 23, 24

K.S.A. § 65-129b .......................................................................................................................12

K.S.A. § 65-201 ..........................................................................................................................9

K.S.A. § 65-202 ................................................................................................................. 12, 22

## RULES

Fed. R. Civ. P. 7 .......................................................................................................................28

Fed. R. Evid. 201 ............................................................................................................ 9, 10, 11

Fed. R. Evid. 803 ......................................................................................................................19

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RESTRAINING ORDER**

Defendants Jay Allen, M.D. ("Allen") and The Board of County Commissioners Of The County Of Linn, Kansas ("Board") hereby provide the following Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order.

## I.      Nature of the Case.

In this action, Plaintiffs seek to raise a constitutional challenge under the Fourth and Fourteenth Amendments to the May 1, 2020 Public Health Order (the "May 1 Order") issued by Defendant Allen, the Linn County Public Health Officer.  Specifically, Plaintiffs appear to contend that certain aspects of the May 1 Order are unconstitutional on the basis that they constitute a warrantless administrative search without providing Plaintiffs with the opportunity for precompliance review by a neutral third party.  The provisions at issue concern the collection of customer names and telephone numbers, along with the dates and times of the customers' visits to certain businesses.  Plaintiffs also appear to argue that those aspects of the May 1 Order place impermissible burdens upon them, though Plaintiffs fail to support those arguments with citation to apposite legal authority or to otherwise demonstrate constitutional injury (or any threat of such injury).  In the present Motion, Plaintiffs are seeking the issuance of a Temporary Restraining Order to restrain, in part, the enforcement of the May 1 Order issued by Defendant Allen.

## II.     Factual and Procedural Background.

### A.     The Parties.

Plaintiffs are two individual residents of Linn County, Kansas.  Plaintiff Taylor asserts that the May 1 Order intrudes upon her expectation of privacy as she "meets with sources at many of the businesses listed in the Order" as part of her "news gathering duties" for the Linn County News.  She also objects that she has not consented to the provisions of the May 1 Order. She asserts that the Order has caused her to limit her interactions[1] with others because she does not want her information to be recorded by businesses covered by the May 1 Order.

Plaintiff Hisel is described as the "owner and operator of Nana Jo's in Linn County, Kansas."  Her complaints concerning the May 1 Order concern the burden it places upon her business to collect and maintain the customer lists described in the May 1 Order.  She also expresses concern that "[i]f a customer does not wish to be listed," she is required to turn the customer away.[2]  She alleges her customers do not want to be placed on the lists she is required to maintain under the May 1 Order.

Defendant Allen is the Public Health Officer for Linn County, Kansas, and has held that position for over twenty years.  He has been a licensed and practicing physician/medical doctor for an even longer period, and is one of a very small number of medical providers in the County.

---

[1] Plaintiff Taylor does not offer any explanation for why she cannot engage in such interactions through other means (telephone, videoconference, or meetings outside of a covered business) that do not require physical entry into covered businesses.

[2] As discussed below, the record-keeping requirement applies only to "in-store" customers.  Plaintiff Hisel does not explain why her business offering service to such customers by curbside or delivery services (which do not require recordkeeping of customer contact information) is not a suitable option.  These latter methods of service were the only methods available to Plaintiff Hisel's business under the prior Public Health Order.

Defendant Board consists of the elected board members, who also serve as the County

Board of Public Health. K.S.A. § 65-201.

**B.      The COVID-19 Pandemic.**

**1.      The Pandemic Presents An Extraordinary Danger Due To Its Rapid Spread
And The Significant Risk of Severe Illness.**

COVID-19 presents a unique health challenge to communities worldwide due to its

transmissibility and the serious health consequences that can arise from the disease.  The World

Health Organization declared COVID-19 to constitute a pandemic on March 11, 2020. WHO,

"Director-General's opening remarks at the media briefing on COVID-19" (March 11, 2020).[3]

This was quickly followed by the proclamation of a State of Disaster Emergency by the Kansas

Governor on March 12, 2020 [Exhibit A, Executive Order No. 20-29, at 1[4]], and an emergency

declaration by President Trump on March 13, 2020. Presidential Actions, "Proclamation on

Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)

Outbreak" (March 13, 2020).[5]  The Centers for Disease Control and Prevention (CDC) has

concluded:

---

[3] Available at:  https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020. Defendants request that the Court take judicial notice of the WHO publications and websites cited in this Memorandum pursuant to Fed. R. Evid. 201(b).  *See e.g., Hadley v. Kellogg Sales Company*, 273 F.Supp.3d 1052, 1061 (N.D. Cal. 2017); *see e.g., Gish v. Newsom*, No. EDCV 20-755 JGB (KKx), 2020 WL 1979970, at *2 (C.D. Cal. April 23, 2020).

[4] This Order is also available at: https://governor.kansas.gov/wp-content/uploads/2020/04/EO-20-29-Implementing-Phase-One-of-Ad-Astra-Plan.pdf.  The original State of Disaster Emergency Proclamation can be accessed at: https://governor.kansas.gov/wp-content/uploads/2020/03/2020-03-12-Proclamation.pdf.

[5] Available at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.  Defendants request that the Court take judicial notice of the Presidential Actions cited in this Memorandum pursuant to Fed. R. Evid. 201(b).  *See Gallaher & Speck, Inc. v. Ford Motor Co.*, 226 F.2d 728, 731 (7th Cir. 1955).

> **The virus that causes COVID-19 is spreading very easily and
> sustainably between people.** Information from the ongoing
> COVID-19 pandemic suggest that this virus is spreading more
> efficiently than influenza, but not as efficiently as measles, which
> is highly contagious.

CDC, "How Covid-19 Spreads" (April 13, 2020) (emphasis in original).[6]  COVID-19 presents an

especially high risk of severe illness to persons aged 65 years and older, and persons of any age

with underlying medical conditions. CDC, "Frequently Asked Questions" (May 12, 2020).[7]

In addition to rapid spread, COVID-19 presents a significant risk of causing severe illness

or death.  The Kansas Department of Health and Environment has reported data which indicates

the rate of serious illness requiring hospitalization in Kansas as being in the range of 39.4.% to

52.1% for those age 65 and above.  *See* KDHE, Hospitalized and Non-Hospitalized Cases by

Age Group (graph of all counties accessed May 13, 2020).[8]  Preliminary case fatality rate data

suggests an overall fatality rate of 1.9%, with the highest rates among those over age 60 (3.6% -

14.8% fatality rates) and those with preexisting conditions such as cardiovascular disease (10.5%

fatality rate), diabetes (7.3% fatality rate), and hypertension (6.0% fatality rate).  *See* Johns

---

[6] Available at: https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.  Defendants request that the Court take judicial notice of the CDC publications and websites cited in this Memorandum pursuant to Fed. R. Evid. 201(b).  *See, e.g., Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Uribe v. Perez*, 5:17-00558 CJC (ADS), 2020 WL 1318358, at *4 (C.D. Cal. Mar. 3, 2020), *report and recommendation adopted,* 5:17-00558 CJC (ADS), 2020 WL 1317727 (C.D. Cal. Mar. 20, 2020); *Lopez v. Bollweg*, CV 13-00691-TUC-DCB, 2017 WL 4677850, at *1 (D. Ariz. June 26, 2017), *aff'd sub nom. Lopez v. Swaney*, 741 Fed. Appx. 486 (9th Cir. 2018).

[7] Available at: https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

[8] Available at: https://www.coronavirus.kdheks.gov/160/COVID-19-in-Kansas.
Defendants request that the Court take judicial notice of the Kansas Department of Health and Environment publications and websites cited in this Memorandum pursuant to Fed. R. Evid. 201(b).  *See Rubin v. Archuleta*, No. 17-cv-00224-MSK, 2018 WL 1427208, at *10 (D. Co. Mar. 22, 2018).

Hopkins Medicine, Johns Hopkins ABX Guide: Coronavirus COVID-19 (SARS-CoV-2) (accessed May 13, 2020).[9]

### 2.    COVID-19 In Linn County, Kansas.

COVID-19 presents a particularly high risk to Linn County, Kansas, given that a significant percentage of its population falls within a high risk group for severe illness. An estimated 22.4% of the population of Linn County, Kansas is age 65 or older. *See* United States Census, QuickFacts: Linn County, Kansas (accessed May 13, 2020).[10] This is significantly higher than state-wide demographics, which reflect 15.9% of the population of Kansas as being over age 65.[11]

Plaintiffs place significant reliance upon data which indicates that there have been only six (6) confirmed COVID-19 cases in Linn County, and that the last confirmed case within the County that has been reported to the Kansas Department of Health and Environment was on March 27, 2020. *See* KDHE, State Map of COVID-19 Cases by County of Residence (accessed May 13, 2020).[12] This data only provides a narrow window into the state of the pandemic within the County, however, as the availability of testing for active cases remains extremely limited. It is presently unknown whether there are active COVID-19 cases within the County that have not

---

[9] Available at: https://www.hopkinsguides.com/hopkins/view/Johns_Hopkins_ABX_Guide/540747/all/Coronavirus_COVID_19__SARS_CoV_2.

[10] Available at: https://www.census.gov/quickfacts/linncountykansas. This Court is hereby requested to take judicial notice of census data cited in this Memorandum pursuant to Fed. R. Evid. 201(b). *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) ("United States census data is an appropriate and frequent subject of judicial notice"); *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996).

[11] Available at: https://www.census.gov/quickfacts/fact/table/KS/PST045219.

[12] Available at: https://www.coronavirus.kdheks.gov/160/COVID-19-in-Kansas. Defendants request that the Court take judicial notice of the Kansas Department of Health and Environment publications and websites cited in this Memorandum pursuant to Fed. R. Evid. 201(b).

yet been confirmed.  However, COVID-19 does not recognize county or state borders, and given the degree of movement of people to, from, and through Linn County, the likelihood of further exposure and spread of the disease within the County is still extremely high.[13]

### a.     The March 27, 2020 Public Health Order

The May 1 Order is not the first Public Health Order issued by Defendant Allen as the Linn County Public Heath Officer in regard to the COVID-19 Pandemic.  The May 1 Order was preceded by a prior Order, issued on March 27, 2020 (the "March 27 Order"). [Exhibit B, March 27, 2020 Public Health Order.[14]]  This Order states that it was issued in accordance with Defendant Allen's authority pursuant to K.S.A. §§ 65-110, 65-129b, and 65-202.

The March 27 Order was characterized as a "shelter in place" order, which ordered all individuals "to stay home and shelter in place and leave their evidence only to perform any of the following 'Essential Activities' as described below." [*Id.,* at 1.]  It provided a list of Essential Businesses which were allowed to remain open to the public, but subject to social distancing and reduction of in-person contacts.  [*Id.* at 2.] Certain of those essential businesses were obligated to permit only curb-side or delivery services, barring public access inside of those businesses. [*Id.* at 2-3.]  Other, "Non-Essential" businesses were ordered closed, including barber/beauty shops, fitness centers, gyms, libraries and certain other businesses that by their very nature require "direct person to person contact of less than 6 feet." [*Id.* at 3.]

---

[13] Indeed, Linn County is not far distant from the Kansas City metropolitan area, which recent news reports indicate has recently experienced a 200% increase in new cases in the past week.  *See* Jonathan Allen, *et al.* "Unreleased White House report shows coronavirus rates spiking in heartland communities," NBC News May 11, 2020 (Accessed May 13, 2020, and available at: https://www.nbcnews.com/politics/white-house/unreleased-white-house-report-shows-coronavirus-rates-spiking-heartland-communities-n1204751).

[14] This Order is also available at: https://www.linncountyks.com/wp-content/uploads/2020/03/SHELTER-IN-PLACE-Order.pdf.

b.      **The May 1, 2020 Public Health Order.**

On May 1, 2020, Defendant Allen, as the Public Health Officer for Linn County, Kansas, issued the Public Health Order at issue in the case at bar. [ECF 1-1]  The Order sets forth that it was issued as a supplement to the Kansas Governor's Executive Order 20-29, and pursuant to the authority granted by the statutes[15] set forth in the March 27 Order. [*Id.*]  The May 1 Order directs that certain specified actions be taken within the County "to mitigate the spread of the Coronavirus (COVID-19) epidemic in Linn County, Kansas." [*Id.*]  The Order first provides for activity restrictions for persons within the County, such as social distancing, that are not challenged by Plaintiffs herein. [*Id.* at 1.]  The Order further provides that businesses within the County must abide by certain additional requirements beyond those set forth in the Governor's Executive Order 20-29. [*Id.* at 2-3, 5.]  The May 1, 2020 Order provides an effective date of May 4, 2020, and that it would continue into effect "until amended, superseded, or rescinded." [*Id.* at 3.]

The May 1 Order, like the March 27 Order, imposes restrictions upon businesses operating in Linn County and the movements of residents within the County.  The restrictions in the May 1 Order are loosened in comparison to the March 27 Order.  [Compare, Exhibit B, March 27 Order; ECF 1-1.]  In short, the May 1 Order allows certain businesses to reopen and for those businesses to allow "in store" customers under certain conditions. [ECF 1-1.]  Those

---

[15] Plaintiffs have not raised any challenge to Defendant Allen's authority to issue the May 1, 2020 Order, and appear to concede that Defendant Allen had the authority to issue the May 1 Order. As such, that issue is not properly before this Court for determination.  However, as the Court has requested the parties to brief that issue, it will be discussed below. *See infra.*, at 15.

conditions include distancing requirements between individuals and limited record-keeping relating to "in store"[16] customers. [*Id.*]

It is this record-keeping requirement that gives rise to the challenge raised by Plaintiffs in the present action. The May 1 Order requires certain businesses to collect certain information with regard to each person who comes into the business ("in-store customers"), specifically the customer's name, phone number, date of visit, arrival time, and departure time. [*Id.*, at 2.] That information must be retained by the business for at least thirty (30) days. [*Id.*] Contrary to the allegations of the Complaint, the May 1 Order does <u>not</u> expressly require businesses to record either the purpose of the customer's visit or the identities of the individuals with who the customer spoke. [*Id.*] The May 1 Order further states that these customer records "must be kept and made available to the Linn County Public Heath Department upon request for the purposes of Contact Tracing…." [*Id.*]

### 3. Contact Tracing.

"Contact tracing is the process of finding out who has recently been in close contact with a person infected with a virus, such as SARS-CoV-2, the virus that causes COVID-19, and reaching out to those people to let them know that they may have been exposed and guide them on what to do next." Mayo Clinic, "What is contact tracing and why is it important in fight against COVID-19?" (April 24, 2020).[17] The process begins with interviewing an individual diagnosed with a COVID-19 infection[18] in an attempt to ascertain what person(s) the individual

---

[16] Recordkeeping is not required for curb-side or delivery customers in the May 1 Order. It is required only with regard to customers coming into the business.

[17] Available at: https://newsnetwork.mayoclinic.org/discussion/what-is-contact-tracing-and-why-is-it-important-in-fight-against-covid-19/.

[18] If the individual is on a ventilator and unable to communicate, similar interviews might be possible of immediate family members.

has been in close contact with and locations visited "during the timeframe while they may have been infectious." [Exhibit C, Centers for Disease Control, "Contact Tracing: Part of A Multipronged Approach to Fight the COVID-19 Pandemic" (April 29, 2020), at 1.[19]] Once those contacts are identified, steps are then taken to "warn these exposed individuals (contacts) of their potential exposure as rapidly and sensitively as possible." [*Id.*] Where the contact is with a business, the contact tracing process involves attempting to notify other persons who were present in the business of the potential exposure. The purpose of the recordkeeping requirements[20] of the May 1 Order are to facilitate that aspect of contact tracing.

The United States Center for Disease Control (CDC) considers contact tracing to be a "core disease control mechanism" and a "key strategy for preventing spread of COVID-19," such that "[i]mmediate action is needed." [*Id.* at 1.] In order to break the chain of disease transmission to the fullest extent possible, "time is of the essence" in contact tracing, as "[i]dentfying contacts and ensuring they do not interact with others is critical to protect communities from further spread." [*Id.* at 2.] Moreover, "[i]f communities are unable to effectively isolate patients and ensure contacts can separate themselves from others, rapid community spread of COVID-19 is likely to increase to the point that strict mitigation strategies will again be needed to contain the virus." [*Id.*] A key performance metric in contact tracing is

---

[19] This publication is available from the CDC website at: https://www.cdc.gov/coronavirus/2019-ncov/downloads/php/principles-contact-tracing-booklet.pdf and in website form at: https://www.cdc.gov/coronavirus/2019-ncov/php/principles-contact-tracing.html.

[20] At least one other jurisdictions has imposed similar recordkeeping requirements, including Washington State. *See* State of Washington "Phase 2 Restaurant/Tavern Reopening COVID-19 Requirements," at 2 (available at: https://coronavirus.wa.gov/sites/default/files/2020-05/Phase2-RestaurantIndustryRe-OpenProposal.pdf).

the time taken from a contact's first potential exposure to notification of that contact through the

contact tracing process. [*Id.* at 3.]

III.   **Issues Presented:**

   A.   **Do Plaintiffs have standing to bring this action and seek relief therein, given that the fourth amendment right at issue in *City of Los Angeles v. Patel* is the right of a *business* to be free of unreasonable administrative searches, and neither of the Plaintiffs are a business entity subject to the May 1 Order?**

   B.   **Is Plaintiffs' Request for a Temporary Restraining Order subject to heightened scrutiny, given that the relief requested would result in a significant deviation from the previous status quo?**

   C.   **Have Plaintiffs failed to demonstrate any constitutional injury (imminent or otherwise) given that neither the Complaint nor the Motion cites any legal authority discussing the constitutionality of a government mandate requiring businesses to keep records of the information at issue?**

   D.   **Have Plaintiffs failed to demonstrate any constitutional injury (imminent or otherwise) given that neither the Complaint nor the Motion cites any legal authority discussing the constitutionality of requiring businesses to collect the information in question from customers?**

   E.   **Have Plaintiffs failed to meet their burden to demonstrate a likelihood of prevailing upon the merits of their claims given the lack of showing of constitutional injury and in light of the balance of benefits weighing against entry of an injunction?**

IV.   **Arguments and Authorities.**

   A.   **Introduction.**

Plaintiffs' Complaint and Motion for Temporary Restraining Order are fundamentally

flawed in both jurisdictional and substantive respects.  The Court lacks jurisdiction to consider

the present motion because the constitutional arguments actually raised by Plaintiffs concern

rights under the Fourth and Fourteenth Amendments against unreasonable administrative

searches of business records.  While one of the Plaintiffs is a business owner, her separately-

organized business is not a party to this action.  Thus, the present motion (and the case as a whole) has not been brought by parties with standing to raise the constitutional issue in question.

There are *three* activities that Plaintiffs appear to contend are placed at issue by the May 1, 2020 Public Health Order.  First, is the alleged obligation on the part of business patrons, such as Plaintiff Taylor, to provide Linn County businesses with certain contact information.  Second, is the obligation for businesses located in Linn County to create customer logs containing the names, phone numbers, dates and visit times of each customer physically coming into the business, and to keep those customer logs for thirty (30) days.  The third activity is the obligation of a business to provide the customer logs to the Linn County Public Health Department upon request for Contact Tracing.  Plaintiffs' Complaint and the Motion for Temporary Restraining Order present legal authority only with regard to their challenge of this last activity.

Plaintiffs' Motion expressly takes issue with what they perceive to be the mandatory nature of the business' provision of the customer logs to the Linn County Public Health Department upon request and without an opportunity for precompliance review of that request, particularly given the potential exposure to monetary sanctions for failure to provide that information.  Defendants' intent was that the business' provision of the customer information be voluntary, leaving open the option of seeking and obtaining a search warrant if a business refused and circumstances necessitated a mandated disclosure.  A business' voluntary provision of its records does not offend constitutional rights. *Compare*, *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990) (discussing how the Fourth Amendment warrant requirement for a police search does not apply where the individual whose property to be searched consents to the search).  In the event a business elects not to voluntarily comply with a request to provide the customer logs, a judicial warrant can be sought for that information

(providing the business with adequate protection of its Fourth and Fourteenth Amendment rights). Alternatively, other, albeit less targeted, means can be employed to alert customers of that business of a potential COVID-19 exposure.

Defendants, however, oppose the granting of any injunctive relief with regard to the mandates of the May 1 Order requiring certain Linn County businesses to keep records of the names, telephone numbers, dates and arrival/departure times of "in store" customers. Plaintiffs have presented no legal authority to this Court which forbids such record-keeping requirements. Absent such authority, they have utterly failed to satisfy their burden as movants seeking a temporary restraining order as to that issue.

Plaintiffs' Complaint and their Motion For Temporary Restraining Order, at their core, challenge the requirement in the May 1, 2020, Public Health Order, that a business provide, upon request by the Linn County Health Department for Contact Tracing, certain information about persons who have come into the business. Plaintiffs rely primarily upon *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 135 S. Ct. 2443, 2446, 192 L. Ed. 2d 435 (2015), which upheld a hotel operator's facial constitutionality challenge to a city ordinance requiring that hotel guest records be made available to the Los Angeles Police Department for inspection. 135 S. Ct. at 2448. The *Patel* Court concluded that the ordinance was unconstitutional because it failed "to provide hotel operators with an opportunity for precompliance review." *Id.* at 2453. What was expressly not at issue in *Patel*, was the constitutionality of the requirement placed on the business to keep and maintain those records. *Id.* at 2454.

**B.** **Preliminary Issues.**

**1.** **A TRO Cannot Be Granted Because Plaintiffs Lack Standing To Raise The Constitutional Challenge They Attempt To Assert.**

A threshold issue this Court must determine is whether Plaintiffs have standing to bring this action and seek the relief requested herein.  In order to have Article III standing to bring a claim, a plaintiff must (1) have suffered an invasion of a legally-protected interest that is both concrete and particularized, (2) a causal connection must exist between the injury and the conduct complained of, and (3) a favorable decision would likely redress the claimed injury.  *See Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006); *Gilbert v. Shalala*, 45 F.3d 1391, 1393–94 (10th Cir. 1995).  Here, Plaintiffs are (1) Plaintiff Taylor, an individual who does not wish to have businesses record her contact information and (2) Plaintiff Hisel, who represents that she is an owner of a business, Nana Jo's, who does not wish to record information regarding her business' customers.

Turning first to Plaintiff Hisel, while she alleges she is the owner of a business, Nana Jo's, that business appears to have been organized as a separate legal entity, Nana Jo's LLC. [Exhibit D, Articles of Incorporation for Nana Jo's LLC[21]].  Plaintiff Hisel does not have standing to assert a constitutional challenge under the fourth amendment on behalf of Nana Jo's LLC, as it is a separate legal person.  *See United States v. Roe*, 421 Fed. Appx. 881, 884 (10th Cir. 2011).  Plaintiff Hisel does not have a direct property interest in the records of Nana Jo's LLC, but rather only a derivative and indirect interest through her ownership interest in the company.  *United States v. Harrison*, 653 F.2d 359, 361–62 (8th Cir. 1981).  Moreover, as Plaintiff Hisel has held out Nana Jo's LLC as a separate entity, via registration of that company

---

[21] The public records of the Kansas Secretary of State are admissible and can be considered by this Court pursuant to Fed. R. Evid. 803(8).  Defendants have requested a certified copy of this record from the Kansas Secretary of State, but it has not been received prior to Defendants' filing deadline under the Court's expedited briefing schedule.  Defendants will supplement this filing with a certified copy of Exhibit D upon receipt of that document upon receipt from the Kansas Secretary of State.

with the Kansas Secretary of State, she is estopped from denying the separate existence and viability of that entity for purposes of the present constitutional challenge.  *See id.*

Turning to Plaintiff Taylor, she also has no constitutional basis to challenge the "warrantless search" of businesses she has provided contact information to under the May 1 Order.  A business record containing Plaintiff Taylor's contact information is property of the business, not Plaintiff Taylor. *See United States v. Miller*, 425 U.S. 435, 440, 96 S. Ct. 1619, 1623, 48 L. Ed. 2d 71 (1976).  She "can assert neither ownership nor possession" of such records. *Id.*  The Fourth Amendment interests of Plaintiff Taylor are not implicated by the disclosure of those records to the Linn County Public Health department.  *See* 425 U.S. at 444, 96 S.Ct. at 1624.

"Fourth amendment rights are personal and may not be asserted vicariously."[22]  *United States v. Skowronski*, 827 F.2d 1414, 1418 (10th Cir. 1987).  As such, only the person whose rights are violated by a search typically has standing to challenge the constitutionality of the search.  *See, e.g., United States v. Mercado-Nava*, 486 F. Supp. 2d 1271, 1276 (D. Kan. 2007) (party did not have standing to challenge search of cell phone under fourth amendment, where the party denied ownership or possessory interest in cell phone).  By extension, the only "person" with potential standing to challenge the constitutionality of the alleged "warrantless search" of a business's customer records would be the business whose records are searched.  Plaintiffs' personal constitutional rights are not implicated by a business's decision to turn over customer contact information in response to an administrative request.

---

[22] In limited circumstances, the U.S. Supreme Court has permitted standing to litigate the rights of third parties. *See Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004).  However, there is no argument by Plaintiffs, here, that either of the Plaintiffs are entitled to third-party standing to assert a constitutional claim on behalf of another person or entity.

Plaintiff Taylor also cannot credibly assert that her personal constitutional rights are threatened by the May 1 Order.  The May 1 Order does not expressly mandate that Plaintiff Taylor provide information to anyone.  Rather, the May 1 Order only mandates that *businesses* collect certain information for "in-store" customers. [ECF 1-1 at 2.]  Taylor cites no legal authority that challenges the constitutionality of a business requiring her to provide name and telephone information in order to visit that business.  Plaintiff Taylor can simply decline to provide that information to the business.  In response, the business might elect to deny her entry to the business premises.  However, Plaintiff Taylor can still engage in contact with persons at the business via telephone, videoconference, meetings outside of the business premises (including "curb-side" business transactions).  Neither Plaintiff Taylor's Complaint nor her present Motion asserts any argument that such consequences impose an unreasonable, let alone unconstitutional, burden on her.  Absent such a showing, Plaintiff Taylor has failed to demonstrate standing to bring claims in this action, let alone any right to injunctive relief.

Additionally, Plaintiffs misrepresent the requirements of the May 1 Order. As discussed above, the information businesses are expressly directed to record consists solely of the customer's name, phone number, date of visit and arrival/departure times, and does not entail recording of the *purpose* of the visit or identification of the persons with whom the customer meets with on the premises.

### 2.     Defendant Allen's Authority To Issue The May 1 Order.

The Court has requested that the parties brief the issue of Defendant Allen's authority for issuance of the May 1 Order.  Neither Plaintiffs' Complaint nor the present motion challenges that authority.  Indeed, Plaintiffs appear to concede that Defendant Allen possessed the authority to issue that Order.  As such, the issue of that authority has not been placed before the Court for

determination.  *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.")  However, in response to the Court's request, Defendants offer the following discussion with regard to the basis for the authority for County Public Health Officers, such as Defendant Allen, to issue Orders of the nature of the May 1 Order.

As a general principal, issues of public health are matters reserved primarily to the states and their subdivisions.  *See State of Louisiana v. State of Texas*, 20 S. Ct. 251, 258, 44 L.Ed. 347, 22 (1900) ("[I]t is also true that quarantine laws belong to that class of state legislation which is valid until displayed by Congress, and that such legislation has been expressly recognized by the laws of the United States almost from the beginning of the government.").  The state's police powers include "the authority of a state to enact quarantine laws and 'health laws of every description.'" *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25, 25 S. Ct. 358, 361, 49 L. Ed. 643 (1905). Such powers embrace both state regulations and legislative enactments and empower "local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and public safety." *Id.*

Turning to Kansas, pursuant to K.S.A. § 65-202, the State of Kansas authorizes, and indeed requires, the Local Health Officer in each County throughout the State to "make or have made an investigation of each case of … acute infectious, contagious or communicable diseases as may be required," to "*use all known measures to prevent the spread of any such infectious, contagious or communicable disease*," and to "perform such other duties as this act, his or her county or joint board, or the secretary of health and environment may require." K.S.A. § 65-202 (italics added).   Standing alone, this statute provides sufficient authority for the issuance of Defendant Allen's May 1, 2020 Order, including its requirements restricting individual

movement, activities of businesses, and conditioning exceptions to those restrictions upon businesses taking action to maintain records of individuals coming into certain businesses to facilitate contact tracing, as all are measures which serve to prevent the spread of disease.

The Kansas Supreme Court has recognized that "[a]mong all the objects sought to be secured by government, none is more important than the preservation of the public health; and, an imperative obligation rests upon the state through its proper instrumentalities or agencies to take all necessary steps to accomplish this objective." *State ex rel. Anderson v. Fadely*, 180 Kan. 652, 665, 308 P.2d 537, 548 (1957).  To reach that objective, the state's highest court has held that "[s]tatutes enacted for this purpose should be liberally construed and the most extensive power may be conferred on administrative boards, either state or local, to carry out such purpose." *Id.*

Consistent with that approach, further authority for the powers of Local Health Officers is provided in Governor Laura Kelly's Executive Order No. 20-29, titled "Implementing Phase One of 'Ad Astra: A Plan to Reopen KANSAS'" and issued on April 30, 2020 [Exhibit A, Executive Order No. 20-29[23]], and in K.S.A. § 65-119. Executive Order No. 20-29 provides that "[l]ocal governments retain authority to issue and enforce equally or more restrictive orders or provisions and retain any authority to issue or enforce isolation or quarantine orders or other orders restricting movement as necessary to respond to escalating or worsening conditions in any local jurisdiction."  [*Id.*]  Defendant Allen's May 1, 2020 Order serves as "a supplement to the Governor's Executive Order 20-29 which Linn County will follow as required."  [ECF 1-1.] K.S.A. § 65-119 authorizes and requires a "local health officer having knowledge of any

---

[23] This Order is also available at: https://governor.kansas.gov/wp-content/uploads/2020/04/EO-20-29-Implementing-Phase-One-of-Ad-Astra-Plan.pdf.

infectious or contagious disease, or of a death from such disease, within their jurisdiction" to "immediately exercise and maintain a supervision over such case or cases during their continuance, seeing that all such cases are properly cared for and that the provisions of this act as to isolation, restriction of communication, quarantine and disinfection are duly enforced." K.S.A. § 65-119(a) (emphasis added).  This includes the power and authorization "to prohibit public gatherings when necessary for the control of any and all infectious or contagious disease." [Id.]

Defendant Allen's May 1 Order at issue does just that.  In its most fundamental form, the May 1 Order is a modified and less-restricted version of the March 27 Order wherein Defendant Allen exercised his power to prohibit public gatherings for purposes of mitigating the spread of COVID-19.  Therein, Defendant Allen required that "essential businesses" prohibit public access to the inside of the store, and "non-essential businesses" remain closed/shut down.  [Compare, Exhibit B, March 27 Order; ECF 1-1.]  Similarly, the May 1 Order prohibits unfettered public gatherings by implementing specific restrictions on the same, i.e., appointments/reservations and the collection of limited customer information.[24]  [ECF 1-1.]  As such, the Order is further authorized by K.S.A. § 65-119(a).

### C.    The Standard Of Review Applicable To Temporary Restraining Orders.

The same standard applies to the issuance of a temporary restraining order and a preliminary injunction.  *Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285, 1289 (D. Kan. 2018).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

---

[24] The May 1 Order provides that "in-store customers are allowed but shall be by appointment or reservation only and the business must maintain the following information on each in-store customer: Customer Name, Phone Number, Date of Visit, Arrival Time and Departure Time for purposes of Contact Tracing.  [ECF 1-1.]  Such information generally aligns with what a business would typically record to set an advance appointment.

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).  Plaintiffs' right to

relief must be clear and unequivocal, given that the injunctive relief requested is an extraordinary

remedy.  *Tickets for Less, LLC v. Cypress Media, LLC*, No. 20-2047-JAR-GEB, 2020 WL

528449, at *2 (D. Kan. Feb. 3, 2020); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,

20 (2008).  Additionally, "injunctions that disrupt the status quo are disfavored and 'must be

more closely scrutinized to assure that the exigencies of the case support the granting of a

remedy that is extraordinary even in the normal course.'" *Beltronics USA, Inc. v. Midwest*

*Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Schrier v. Univ. of*

*Colo.*, 427 F.3d 1253, 1259 (10th Cir.2005)).  "In seeking such an injunction, the movant must

make a strong showing both with regard to the likelihood of success on the merits and with

regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016) (citation

omitted).

In this context, the status quo consists of the "last peaceable uncontested status existing

between the parties before the dispute developed." *Schrier*, 427 F.3d at 1253.  The specific

relief requested by the Motion is not at all clear, but would result in a change in the status quo,

by placing the parties and the citizens of Linn County into a far different set of circumstances

than were applicable prior to the entry of the May 1 Order.  Here, Plaintiffs appear to seek an

injunction as to the enforcement of only part of the May 1 Order.[25]  As best as it can be

discerned, their Motion only appears to seek an order barring Defendants from engaging in what

---

[25] For example, they raise no challenge (constitutional or otherwise) regarding the
restrictions on movement and business operations within that Order, nor do they expressly seek
any relief regarding those restrictions.

the Motion describes as "warrantless searches."  As framed by the legal authority Plaintiffs rely upon, their concerns appear to be targeting the provisions of the May 1 Order that obligate businesses to provide customer names, phone numbers and dates/times of customers' "in-store" visits in response to requests by the Linn County Health Department for such information for the purpose of Contact Tracing. [*See* ECF 7, at 9-14.]  As discussed below, Plaintiffs present no authority barring or drawing into question under the Fourth Amendment (or indeed any other constitutional provision) a mandate requiring businesses to collect customer contact information. *See infra, at* 29.

Here, the "last peaceable status" prior to the entry of the May 1 Order was the status as things stood under the March 27 Order.  As discussed above, the May 1 Order made numerous changes to the restrictions imposed by the March 27 Order.  The most significant change in the May 1 Order was beginning the transition from the March 27 Order's directive closing certain categories of businesses and allowing others to provide only curb-side and delivery services, to allowing in-store customers, subject to certain restrictions and record-keeping requirements. [*Compare*, Exhibit B, March 27 Order; ECF 1-1.]

Granting the present motion and enjoining the collection and/or availability of the information to the Health Department while permitting "in-store" visits by customers of the businesses at issue would not return circumstances to the "status quo" as they existed prior to entry of the May 1 Order.  Instead, it would create a situation presenting an unacceptable risk for un-checked exposure and transmission of COVID-19, by allowing "in-store" visits by customers without the opportunity to mitigate those risks by conducting speedy and accurate conduct contact tracing in the event a customer is diagnosed with a COVID-19 infection.  As such, exacting scrutiny must be applied to Plaintiffs' present request for a temporary restraining order.

**D.      Plaintiffs Have Not Met Their Burden To Establish A Right To A Restraining Order.**

Upon its merits, Plaintiffs' Motion fails to meet their burden for seeking a temporary restraining order.  First, due to the standing issues discussed above, Plaintiffs lack standing to raise a constitutional claim with regard to the alleged administrative search of business records. This is the only issue upon which Plaintiffs offer any apposite legal authority bearing upon an alleged constitutional injury.  As to constitutional claims that Plaintiffs seek to assert based upon their personal rights not to provide information to businesses subject to the May 1 Order, the motion fails to demonstrate a likelihood of success on the underlying merits of their claims, due to the failure to cite any apposite legal authority demonstrating even a colorable constitutional violation.  Simply put, they have failed to present any authority which establishes any existing or threatened constitutional injury to themselves with regard to the aspects of the May 1 Order directing certain businesses to collect and retain records of certain customer information. Moreover, the balance of equities weighs against entry of an injunction.

**1.      Plaintiffs Have Failed To Offer Any Authority Demonstrating That The Mandate Requiring Certain Businesses To Collect Of Contact Information For "In-Store" Customers Violates Plaintiffs' Constitutional Rights.**

In this section, Defendants will demonstrate that Plaintiffs' legal argument focuses solely upon the constitutionality of provision of the May 1 Order that require businesses to provide customer Contact Tracing information in response to requests by the Linn County Health Department.  Plaintiffs neither cite to nor discuss any legal authority which draws into constitutional question the requirement of the May 1 Order requiring businesses to collect certain information from their "in-store" customers.  Nor do Plaintiffs present any legal authority which supports a constitutional challenge on the part of a customer to the business' request for such

information.  Lacking any apposite legal authority for such challenges, this Court should

disregard Plaintiffs' challenges to those aspects of the May 1 Order and decline entry of a TRO

on that basis.[26]

The authority cited by Plaintiffs in Section 4.2.1 of Plaintiffs' Memorandum in Support

concerns challenges to administrative searches (and/or seizures) of a business' own records[27] or

other property.[28]  They do not speak to the constitutionality of provisions directing businesses to

keep particular records.  Indeed, the central U.S. Supreme Court case Plaintiffs rely upon, *City of*

*Los Angeles v. Patel* expressly provides that the Court's holding is narrowly directed solely to

the warrantless administrative search contemplated by the particular ordinance under review, and

does not question the constitutional propriety of the ordinance's requirement that the business

keep and maintain the records at issue:

> [W]e underscore the narrow nature of our holding. *Respondents*
> *have not challenged and nothing in our opinion calls into question*

---

[26] Fed. R. Civ. P. 7(b) mandates that any motion requesting a court order "state with particularity the grounds for seeking the order." D. Kan. R. 7.6(a)(4) provides that memoranda filed in support of motions "shall contain" an argument section that "shall refer to all statutes, rules, and authorities relied upon." *See Kannaday v. Ball*, 09-2255-JWL, 2010 WL 743055, at *1 (D. Kan. Feb. 25, 2010).

[27] *See, e.g., Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 474 (S.D.N.Y. 2019), *appeal withdrawn,* 19-288, 2019 WL 3492425 (2d Cir. May 9, 2019) (ordinance requiring short term rental booking services to provide city with monthly transaction reports regarding rental properties); *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 281 (6th Cir. 2018) (administrative search of business' own books, records, and inventory); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 348, 51 S. Ct. 153, 155, 75 L. Ed. 374 (1931) (abrogation on other grounds recognized by *Arizona v. Gant*, 556 U.S. 332, 350, 129 S. Ct. 1710, 1723, 173 L. Ed. 2d 485 (2009)) (seizure of party's own books and papers).

[28] *See, e.g. MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 408 (E.D. Mich. 2019) (ordinance requiring warrantless inspection of rental property); *Joe Flynn Rare Coins Inc. v. Stephan*, 526 F. Supp. 1275, 1285 (D. Kan. 1981) (act authorizing warrantless seizure of contraband (stolen) items from precious metal dealers' inventory); *See v. City of Seattle*, 387 U.S. 541, 545, 87 S. Ct. 1737, 1740, 18 L. Ed. 2d 943 (1967) (administrative search of commercial real estate); *Camara v. Mun. Court of City & County of San Francisco*, 387 U.S. 523, 526-527, 87 S. Ct. 1727, 1729, 18 L. Ed. 2d 930 (1967) (search of apartment by housing inspector).

> *those parts of § 41.49 that require hotel operators to maintain*
> *guest registries containing certain information.* And, even absent
> legislative action to create a procedure along the lines discussed
> above, police will not be prevented from obtaining access to these
> documents. As they often do, hotel operators remain free to
> consent to searches of their registries and police can compel them
> to turn them over if they have a proper administrative warrant—
> including one that was issued *ex parte*—or if some other exception
> to the warrant requirement applies, including exigent
> circumstances.

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 135 S. Ct. 2443, 2454, 192 L. Ed. 2d 435

(2015) (italics added and internal citations omitted). Nor does *Patel* raise any constitutional

prohibition against businesses electing to voluntarily provide such information from their

records. *See id.* Notably, *Patel* also makes clear that where an exception to a warrant

requirement exists (such as exigent circumstances), requiring a business to provide such

information in response to an administrative search does not violate the business' Fourth

Amendment rights. *See id.*

Nor can Plaintiffs credibly argue that imposing upon a business to collect and briefly

retain basic customer contact information imposes an unconstitutional obligation upon a

business. Even where recordkeeping is mandated in the context of activities that have clear

constitutional implications and privacy concerns, similarly nominal recordkeeping requirements

have been found to withstand constitutional scrutiny in light of the compelling government

interest of protecting public health. *Compare*, *Planned Parenthood of Cent. Missouri v.*

*Danforth*, 428 U.S. 52, 79-81, 96 S. Ct. 2831, 2846-47, 49 L. Ed. 2d 788 (1976) (discussing

recordkeeping requirements imposed on abortion providers and concluding that they did not

amount to an unconstitutional burden to the provider or patient). Again, Plaintiffs offer no

authority which has held that any comparable mandated recordkeeping was found to impose an

unconstitutional burden or otherwise was prohibited under the Constitution.

Plaintiffs' Motion and their Verified Complaint raises a number of allegations, particularly with regard to Plaintiff Taylor, expressing concern about the recordkeeping requirement enabling the "track[ing] of her whereabouts" and that being required to be included on contact tracing lists would "reveal with whom she meets, for how long, and for what purpose."[29]  [ECF 1 at 7.]  She also misrepresents that the customer lists could be accessed for "any purpose" including "simple curiosity."[30] [*Id.*]  As with the previous issue, Plaintiffs offer no case law demonstrating that recording of her contact information by a business violates her individual constitutional rights.  However, required disclosure an individual's name and basic contact information (such as a home address) to a business has generally not been considered to violate an individual's constitutional rights, even when the information is ultimately to be provided to the government, particularly when the disclosure is required for a legitimate interest. *See e.g., Shane v. Buck*, 658 F. Supp. 908, 917 (D. Utah 1985), *aff'd,* 817 F.2d 87 (10th Cir. 1987) (discussing requirement to provide of name and address to postal service in submission of form seeking obtain delivery of mail through an agent).

For example, *Whalen v. Roe*, 429 U.S. 589, 602, 97 S. Ct. 869, 877, 51 L. Ed. 2d 64 (1977), the U.S. Supreme Court upheld a state statute requiring doctors to provide the government with copies of prescription forms for certain drugs, thereby disclosing the patients' names, addresses, and ages, as well as information regarding the drug and dosage.  *See* 429 U.S. at 589, 97 S.Ct. at 871.  Despite the clearly sensitive and personal nature of the information (linking patients and their contact information with particular medications and dosages), the

---

[29] This allegation misrepresents the information a business must collect under the May 1 Order.  Nowhere in the May 1 Order is there any requirement to record who a customer met with or the reason for the customer's in-store visit. [ECF 1-1.]

[30] The May 1 Order clearly provides that requests for customer information shall be for contact tracing. [ECF 1-1.]

Court concluded that the statute did not violate patients' constitutional rights, viewed either on privacy or deprivation of liberty grounds. *See* 878 U.S. 602-03, 97 S.Ct. at 878.  By analogy, here, a requirement that businesses collect and temporarily keep records regarding customer names and telephone numbers, and the dates and times of the customers' visits is a minimal intrusion adequately justified by the very real public health interests in facilitating rapid and accurate contact tracing.

Plaintiffs' allegations also unreasonably assume that blanket requests to businesses county-wide would be made, as opposed to the Linn County Public Health Department making directed requests to particular businesses for customer lists for specific dates/times upon learning from a contact-tracing interview of a COVID-19 patient (or a family member if the patient cannot be interviewed) that the patient had visited a particular business.  The latter is the interpretation more consistent with the purpose and mechanisms of contact tracing.  Those mechanisms are focused upon directing warnings to the specific persons (contacts) who have been potentially exposed in order to secure the isolation of those individuals to prevent further spread of illness and to connect those individuals with appropriate treatment. [*See* Exhibit C, at 2 (discussing the need to "warn contacts of exposure, assess their symptoms and risk, and provide instructions for next steps").]  The latter construction avoids Plaintiff Taylor's concerns about widespread tracking of her whereabouts.  Thus, even if a constitutional issue was raised by Plaintiff Taylor and supported, here (which again it has not), this aspect of the May 1 Order would withstand constitutional scrutiny via Defendants' proffered reasonable construction of the May 1 Order.  *See, generally, Gonzales v. Carhart,* 550 U.S. 124, 153, 127 S. Ct. 1610, 1631, 167 L. Ed. 2d 480 (2007) (discussing the canon of constitutional avoidance and its mandate "that

every reasonable construction must be resorted to, in order to save a statute from unconstitutionality").

2.     **The Exigencies Of The COVID-19 Pandemic Necessitate Requiring Businesses To Gather Customer Contact Information To Protect Public Health Via Contact Tracing And Notification.**

It has been long recognized that epidemics present communities with heightened interests to protect public health and safety.  "Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 25 S. Ct. 358, 362, 49 L. Ed. 643 (1905).  *Jacobson* recognized the needs of a community to require mandatory vaccination as prevailing over individuals' challenge to such mandates as a violation of individual rights.  *See generally, id.*  Vaccination involves a personal bodily intrusion, certainly a much more tangible circumstance than the minimal requirement of keeping records of customer names and phone numbers, or being faced with business requests for such information.

Preventing the spread of disease has been suggested as a basis for a finding of exigent circumstances in a number of cases.  *See, e.g., United States v. Gilliam*, 842 F.3d 801, 804 (2d Cir. 2016) (exigent circumstances for GPS tracking of defendant's cell phone suspected of transporting a minor for purposes of prostitution, to prevent harm to the minor including the "serious potential risk of [the minor] contracting a sexually transmitted disease"); *Miles v. D.C.*, 354 F. Supp. 577, 580 (D.D.C. 1973), *aff'd*, 510 F.2d 188 (D.C. Cir. 1975) (discussing that destruction of a building to "prevent the spread of a contagious disease" would be justified as an emergency action).  Here, faced with a pandemic disease with rapid community spread and a significant risk of severe illness and death (a risk which is especially acute given the demographics of Linn County), it would be incredible to assert that exigent circumstances were

not present here. Indeed, the balance of interests overwhelmingly favors rapid access to contact tracing information in order to break the chain of infection and to protect public health, and such interests substantially outweighs the negligible impacts on privacy and convenience raised by Plaintiffs in the present motion.

A number of Courts, including this Court, have declared that the COVID-19 pandemic presents exigent circumstances that necessitate abridgements of or intrusions upon constitutional rights, such as the right to a speedy trial. *See, e.g.,* D. Kan. Administrative Order 2020-3, "In re Criminal Hearings and Trials Under the Exigent Circumstances Created by COVID-19 and Related Coronavirus Health Conditions," (March 13, 2020). If the exigent circumstances of the COVID-19 pandemic can permit delay of a criminal defendant's clearly-established right to a speedy trial, those same exigencies can support a governmental mandate that certain business keep records of customer contact information for a limited period of time to help limit the spread of a serious, highly contagious, disease, especially in the light of the lack of showing of even a colorable constitutional violation as a result of such a mandate.

As discussed in the CDC materials cited above, expeditious contact tracing, notification, and isolation/treatment is an essential component of controlling the spread of COVID-19, both in Linn County and beyond. The May 1 Order, by requiring businesses to maintain records for a limited period of time as to the identities and telephone numbers of "in store" customers, alongside the date and arrival/departure times of the customer directly supports Defendants' efforts to promote public health, as it provides a resource to enable speedy and targeted contact tracing. Upon becoming aware of a new COVID-19 case, an interview can be conducted of the individual affected, to ascertain what businesses that person visited during the time period during which they may have been capable of transmitting the disease. The Linn County Health

Department can then reach out to those businesses, to obtain the contact tracing information held by those businesses for the date(s) and time(s) in question.  The names and phone numbers, in turn, provide a direct means to communicate with those potentially-exposed customers for purposes of isolation and treatment.  The recordkeeping requirement in the May 1 Order is directly and rationally related to protection of public health and in the present circumstances is essential to meeting that goal.  Simply put, requiring a business to maintain such information is the only way to ensure the most rapid path to identify and contact the specific individuals potentially exposed to COVID-19 at a business, and to ensure their prompt isolation and treatment to limit the potential for further spread.[31]  Absent such records, it would be difficult, at best, to identify which individuals may have been present at a business at a particular date and timeframe.  While some of that information could potentially be reconstructed via some means (credit/debit card transactions), such efforts would take additional time and the resulting delay would provide further opportunities for the exposed individuals to engage in activities in the public sphere and transmit the disease to others.  As such, the mandate in the May 1 Order is not only rationally related to an important public health objective, the exigent nature of the COVID-19 pandemic makes such recordkeeping essential.

        **E.**      **To The Extent, If Any, That Plaintiffs Have Standing With Regard To Requests for Customer Lists Maintained by Businesses Pursuant To The May 1 Order That Issue Is Readily Addressed By A Rational Construction Of The Relevant Provisions Of The Order.**

---

[31] While outside the scope of the issues in this case, given the serious nature of the COVID-19 pandemic and the significant percentage of fatalities arising from COVID-19 infection, a business' failure make reasonable efforts to keep and maintain sufficient records to permit expeditious contact tracing could lead to further exposure and infections, potentially creating civil liability exposure for the business on claims by parties injured thereby.

Plaintiffs' only legal argument with regard to the propriety of the May 1 Order for which Plaintiffs offer any legal authority is the obligation to provide the customer records kept under the Order to the Linn County Public Health Department upon request for contact tracing, which they attempt to challenge based upon a claimed absence of precompliance review. For the reasons discussed above, neither of the named Plaintiffs has standing to raise that argument, here. However, it was Defendants' intent to first permit businesses the opportunity to voluntarily disclose customer records, and that such request would be made upon a business only upon becoming aware in the process of a contact-screening interview, that an individual diagnosed with COVID-19 had been a patron of that business. In the event a business declined voluntary disclosure in response to a request, Defendant Allen (or his designee) must seek a judicial warrant if the circumstances necessitated a forced disclosure of the records.

A voluntary, consensual provision of a business' records by the business does not offend any constitutional principles. *Compare*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44, 36 L. Ed. 2d 854 (1973) ("It is equally well settled that one of the specifically established exceptions to the [Fourth Amendment] requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.") Where consent is not given, the acquisition of a judicial warrant to secure the business' records provides adequate protection to a business' constitutional rights under the Fourth and Fourteenth Amendments. Simply put, Defendants' intended application of the May 1 Order would not offend constitutional norms.

Wherefore, for the reasons stated above, Defendants Jay Allen, M.D. ("Allen") and The Board of County Commissioners Of The County Of Linn, Kansas respectfully request that the Court deny Plaintiffs' Motion for Temporary Restraining Order or grant Defendants such other

35

relief as Defendants may show themselves entitled and the Court deems to be reasonable, appropriate, and just.

Respectfully submitted,

**Case Linden P.C.**


s/ Kevin D. Case
Kevin D. Case, KS 14570
Patric S. Linden, KS 18305
Jennifer G. Ahlbrandt, KS 26980
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
patric.linden@caselinden.com
jennifer.ahlbrandt@caselinden.com
Attorneys for Defendants

**<u>Certificate of Service</u>**

I hereby certify that on May 14, 2020, a true and correct copy of the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Samuel G. MacRoberts
Kansas Justice Institute
12980 Metcalf Ave., Suite 130
Overland Park, KS  66213
Attorney for Plaintiffs

Ryan A. Kriegshauser
Kriegshauser Law, LLC
10505 W. 138th St., Unit 4493
Olathe, KS  66062
Attorney for Plaintiffs

<u>s/ Kevin D. Case</u>
Kevin D. Case