## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| *Jackie Taylor et al.* | |
| Plaintiffs, | |
| *v.* | Case No. 2:20-cv-02238-HLT-ADM |
| *Jay Allen M.D. et al.* | |
| Defendants. | |

## BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION OF KANSAS AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS

Linn County has adopted an order indefinitely requiring businesses to maintain a log of customer contact information that must be shared with county health officials upon request. The purpose of the requirement is ostensibly to facilitate contact tracing for COVID-19 cases.  While the Centers for Disease Control and Prevention ("CDC") has recommended contact tracing as a critical mitigation tool for preventing the spread of COVID-19, it has also advised that any program should be "voluntary, confidential, and culturally appropriate."[1] Linn County's order bears none of these hallmarks. By forcing businesses to collect and disclose customer contact information absent a warrant or any other pre-compliance review mechanism, Linn County is flouting both the Constitution and sound public health recommendations. Accordingly, amici respectfully request that this Court invalidate the order.

## STATEMENT OF INTEREST

The American Civil Liberties Union of Kansas ("ACLU-KS") is a non-profit and non-partisan organization dedicated to preserving and advancing the civil rights and legal freedoms of Kansans guaranteed by the United States Constitution and the Bill of Rights. ACLU-KS has approximately 9,000 members in Kansas.

---

[1] Centers for Disease Control and Prevention, *Health Departments: Interim Guidance on Developing COVID-19 Case Investigation & Contact Tracing Plan, Center for Disease Control* (May 13, 2020), at 42, *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/case-investigation-contact-tracing.pdf.

## ARGUMENT

**1.  Pre-Compliance Review is Necessary to Protect Linn County Businesses from Arbitrary Intrusions into Their Privacy.**

For an administrative search regime to comply with the Fourth Amendment it must include a procedure for individualized review of search demands. *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 548 (1967); *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015); *Zadeh v. Robinson*, 902 F.3d 483, 489 (5th Cir. 2018) ("a requirement of precompliance review in many, if not most, administrative searches had been clearly established by Supreme Court precedent prior to the search here").  The Supreme Court has held that individualized review is necessary to ensure that searches do not exceed statutory limits and are not used to create a pretext for harassment even where statutory safeguards exist. *Patel*, 135 S. Ct. at 2452-53 ("the availability of precompliance review alters the dynamic between the officer and hotel to be searched, and reduces the risk that officers will use these administrative searches as a pretext to harass business owners").

Here, Linn County's Order lacks statutory safeguards or any definitive limitations on the circumstances in which the government can demand customer lists. While the order states the list will be used "for the purposes of Contact Tracing," the order does not define contact tracing nor does it limit the scope of the request to customer lists on the day a COVID-positive client visited the business.  Consequently, the Order gives Linn County a license to obtain at least 30 days of a business' customer information and use it for whatever purpose the county deems.  Given the breadth of the Order, a pre-compliance review process is particularly critical to preserve business's Fourth Amendment rights.

**2.  Linn County's Order Infringes on the First Amendment Interests of Customers.**

Compelled inspection of customer lists likely chills associational activity protected by the First Amendment. It is well-established that disclosure of associational activity to the government has the potential to deter participation and "infringe on privacy of association and belief guaranteed by the First Amendment." *Doe v. Reed*, 561 U.S. 186, 203 (2010) (Alito, J., concurring) (citing *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)).   Here, Linn County's customer list disclosure requirement applies to a broad range of businesses including newspapers and attorneys' offices. Speaking to the media and seeking legal redress are First Amendment activities in which individuals may be deterred from participating if disclosure to the government is required. *See*, *e.g.*, *Reporters Committee for Freedom of the Press v. AT&T*, 593 F.2d 1020, 1046-47 (D.C. Cir. 1978) (acknowledging associational rights of the press and confidential sources as well as possible chilling effect); *Bhd. Of R.R. Trainmen v. Va. State Bar*, 377 U.S. 1, 7 (1964) (recognizing a First Amendment protected interest in seeking legal redress). By mandating the collection of customer information and disclosure to the county without restriction, the Order provides the government with a method for identifying participants in protected First Amendment activities and threatens to chill these associational freedoms.

**3.  Voluntary Cooperation with Contact Tracing Efforts Will Be More Effective than Mandatory Disclosure Requirements.**

Public health experts agree that voluntary pandemic mitigation measures are more likely to induce compliance than coercive requirements.[2] Contact tracing is no different.[3] Both customers and business owners are more likely to provide information if they have the option to comply

---

[2] *See* Aledort, J.E., Lurie, N., Wasserman, J., Bozzette, S.A., *Non-pharmaceutical public health interventions for pandemic influenza: an evaluation of the evidence base*, 7(1) BMC PUBLIC HEALTH 208-09 (2007) ("widespread government mandates to segregate individuals, including isolation, quarantine, sheltering, location-based community restrictions, and travel restrictions, are less likely than voluntary measures to be recommended, especially over the longer-term").

[3] *See Interim Guidance on Developing COVID-19 Case Investigation & Contact Tracing Plan*, *supra* note 1, at 42 ("contact tracing must be voluntary").

with a narrowly tailored, specific request for information. Most people, if given the option and confident of privacy protections and other limits on use, would want to be told if someone who has been near them tests positive. On the contrary, an obligatory requirement might scare off those people who would otherwise agree to provide their information on a voluntary basis.

## CONCLUSION

For the foregoing reasons, we urge the Court to grant Plaintiffs' request for a Temporary Restraining Order against Linn County's disclosure requirement.

Dated: May 14, 2020

Respectfully Submitted,

**ACLU FOUNDATION OF KANSAS**

/s/  Lauren Bonds
LAUREN BONDS, KS Sup. Ct. No. 27807
ZAL K. SHROFF, KS Sup. Ct. No. 28013
ACLU FOUNDATION OF KANSAS
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

*Counsel for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1, ACLU-KS as *amicus curiae* states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.