In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Jackie Taylor;** **Linda Jo Hisel.**  Plaintiffs, v. **Jay Allen, M.D.,** in his official capacity as Linn County Heath Director; **The Board of County Commissioners of the County of Linn, Kansas.**  Defendants. | Civil Action No. 2:20-CV-02238 – HLT-ADM  Reply Memorandum in Support of Motion for Temporary Restraining Order |

**Reply Memorandum in Support of Motion for Temporary Restraining Order**

1. **Defendants Concede the Health Order Does Not Have a Precompliance Review Process and Is Therefore Unconstitutional. This Concession is Enough to Grant the Restraining Order given the Health Order's Language.**

    The Defendants' position is absolutely remarkable. At its core, they argue the Order (Doc 1-1) at issue was "intended" to be voluntary. (Doc. 15 at 35.) ("[I]t was Defendants' *intent* to first permit businesses the opportunity to voluntarily disclose customer records[.])  (italics added); (Doc. 15 at 17.) ("Defendants' *intent* was that the business' provision of the customer information be voluntary[.]") (italics added). This is surprising for a number of reasons, not the least of which is the Order's language.[1]

---

[1] Doc. 15 is the first time Defendants have suggested the Order at issue was "intended" to be voluntary.

The Order unequivocally states the customer records "**must be kept and made available** to the Linn County Public Health Department **upon request**[.]" (Doc. 1-1) (emphasis added).

The Order threatens Linn County residents that if they do not comply, "any sheriff, deputy sheriff or other law enforcement officer of the state or any political subdivision within Linn County, Kansas is hereby ordered to assist in the execution or enforcement of this Order." (Doc. 1-1 at 3.); and ("Any person violating any provision of this order or failing to comply with any of the above requirements shall be fined, upon conviction, up to $500 for each offense[.]").

Faced with unambiguous caselaw, Defendants now claim –again, for the very first time– that they had *intended* to make the process voluntary and their (intended) plan was to seek a warrant. (Doc. 15 at 35.) ("In the event a business declined voluntary disclosure in response to a request, Defendant Allen (or his designee) must seek a judicial warrant if the circumstances necessitated a forced disclosure of the records."). Balderdash. There is no way to interpret the Order's language, or the public comments about the order, as anything other than a command for information, and that the information must be provided upon demand. The Order does not, in any way, describe a voluntary process, explain that a business can object, and makes absolutely no reference to the brand-new warrant process described in the responsive memorandum. Defendants are attempting to re-write the Order, and history, to prevent the issuance of a restraining order. These attempts should be ignored in the face of the Order itself. Their after-the-fact assertion that the Order was "intended" to be voluntary should be easily

discounted. If Defendants actually intended to make the process voluntary, why did they not simply amend the order?

In any event, the law is clear: the lack of a precompliance review process in the Order renders it unconstitutional on that basis alone. Precompliance review is precompliance review, and this Order does not provide for it. Defendants concede this point repeatedly, and even admit, now for the first time, they need to, at the very least, seek a warrant. (Doc. 15 at 35.) ("Defendant Allen (or his designee) must seek a judicial warrant if the circumstances necessitated a forced disclosure of the records."). This concession justifies the issuance of the restraining order to enjoin the mandatory warrantless regime as written.

2.      **Both Plaintiffs have Standing**

Defendants assert that the Plaintiffs do not have standing while seemingly conceding that Nana Jo's LLC would have standing. (Doc. 15 at 20). To the extent the Court deems it necessary to add Nana Jo's LLC as a party, the Plaintiffs request leave to do so and will do so at the earliest opportunity possible. However, such a requirement is not necessary for the reasons described below.

It should not escape notice that the seminal case in this manner involved a motel operator asserting his constitutional claims, not the hotel itself. *City of Las Angeles v. Patel*, 576 U.S. 409 (2015). Nana Jo's LLC is a single-member Kansas Limited Liability Company. Accordingly, she has a sufficient personal stake such that she has standing to pursue constitutional violations even if a Company may also be involved, such as in *Patel*. *See eg. Franchise Tax Bd. Of California v. Alcan Aluminum Ltd.*, 493 U.S. 331 (1990) *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (2013) (showing owners of companies have standing

alongside their companies to pursue constitutional violations). The Defendants here cite to cases against individuals in a criminal context but not to cases involving business entities. The Defendants further do not point to any authority that a single-member of a single-member Limited Liability Company cannot assert a constitutional injury incurred in the individual's capacity as the sole owner of the Company.

As to the Plaintiffs individually, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), sets forth the familiar three elements of the "irreducible constitutional minimum of standing." First, a plaintiff must have suffered an "injury in fact" – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. And third, it must be "likely," as opposed to merely "speculative,' that the injury will be "redressed by a favorable decision."

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, see *id.,* at 756, 104 S.Ct., at 3327; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972);[1] and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore, supra,* 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a

causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct., at 1924, 1926. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

All of the above are present as to both Plaintiffs in the case at bar.  By the clear text of the Order, criminal penalties purportedly attach to "any person violating ***any*** provision of this order or failing to comply with ***any*** of the requirements above." (Doc 1-1 at 3.) (emphasis added).  Further, the Order purports to "order" law enforcement to assist in its execution. (*Id.*)  Accordingly, Plaintiff have been told they could incur criminal penalties if they (1) refuse to sign a list; (2) as a business, refuse to maintain a list; and (3) refuse to turn a maintained list over to law enforcement. In addition to the plain text of the Order at issue, public comments and government direction indicate the Order is mandatory and will be enforced.  (Doc 1, paragraphs 23 and 45).  The Plaintiffs need only show they face a "credible threat" of enforcement. *See Consumer Data Inustry Ass'n v. King*, 678 F.3d 898, 905 (10th Cir. 2012). Such a threat exists in the test of the Order itself, and can be inferred from the public comments from other government officials as indicated above. The Plaintiffs have been injured by being forced under criminal penalty to comply with the Order as stated above.  There can be no question that the Order was issued and its contents are not in dispute.  The Order itself is forcing the Plaintiffs to comply, violating the Plaintiffs' constitutional rights by imposing an

5

unconstitutional regime. A temporary restraining order preventing the enforcement of the Local Health Order as written will alleviate the injury.

With respect to Plaintiff Taylor, Defendants claim Plaintiff Taylor cannot challenge the warrantless search regime at issue. (Doc 15 at 20). Defendants rely on *United States v. Miller*, 425 U.S. 435, 440 (1976). Defendants ignore recent Fourth Amendment developments. The Supreme Court's conclusion in *Carpenter v. United States* was "unmistakable … that the rational of … *Miller* is wrong." *Carpenter v. United States*, 138 S. Ct. 2206, 2272 (2018) (J.Gorsuch, dissenting).

"Although no single rubric definitively resolves which expectations of privacy are entitled to protection, the analysis is informed by historical understandings "of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted." *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). On this score, our cases have recognized some basic guideposts. First, that the Amendment seeks to secure "the privacies of life" against "arbitrary power." *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Second, and relatedly, that a central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance." *United States v. Di Re*, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948)." *Carpenter v. United States*, 138 S. Ct. 2206, 2213–14, 201 L. Ed. 2d 507 (2018)

In *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018), the United States Supreme Court expressly declined to extend the third-party doctrine outlined in *Miller*. *Carpenter* held that a "person does not surrender all Fourth Amendment protection by venturing into the

6

public sphere. To the contrary, what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* (cleaned up).

Just as in *Carpenter*, this list compilation and dissemination requirement "provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.' These location records 'hold for many Americans the 'privacies of life.'" *Id.* (cleaned up). Given the Order's breadth, a public health officer will see whether Ms. Taylor visits a lawyer, a doctor, the bank, and so on, in perpetuity. Tracking her movements will be easy. In fact, that is the whole purpose of the Order. The warrantless scheme here is akin to the scheme outlined in *Carpenter* because it would reveal Ms. Taylor's movements over time. Just as in *Carpenter*, Ms. Taylor has standing and the warrantless scheme is unconstitutional.

Moreover, for Ms. Taylor, according to the Order, she *must* disclose private information for which she has a property interest, if she wants to eat at a restaurant, consult with a lawyer, visit a doctor, and so on. Practically, she has no choice.  Moreover, this all-encompassing, pervasive registry scheme chills a person's ability seek medical services, legal services, and so on. It invades Ms. Taylor's privacy rights and her property rights in her own information, and allows the government to track, and nearly every single movement. Again, it also invades her property interests in her private information. See Jones; See Carpenter, (J. Gorsruch, dissent).

In the end, the Defendants' argument must fail. The *Carpenter Court* unequivocally held that Mr. Carpenter had standing to challenge a search of transaction records held by third parties.

But Defendants are wrong for another reason altogether. The government is forcing businesses and their owners to compile the information to begin with. Therefore, the businesses have become agents of the government for fourth amendment purposes. "The government may not do, through a private individual, that which it is otherwise forbidden to do. Accordingly, if in light of all the circumstances a private party conducting a search must be regarded as an instrument or agent of the government, the fourth amendment applies to that party's actions. *Coolidge*, 403 U.S. at 487, 91 S.Ct. at 2048." *United States v. Feffer*, 831 F.2d 734, 737 (7th Cir. 1987).

And finally, as Plaintiffs have repeatedly stated, the Order as written will penalize Ms. Hisel for refusing to compile and/or disclose the lists. Ms. Taylor must sign the list or refuse, at her peril. The requirements are mandatory and there is no precompliance review process. Both Plaintiffs' property/privacy rights are being infringed as well by virtue of the fact they must disclose this information.

**3.    The Status Quo is the Status Prior to the Issuance of the Order at issue**

As in *First Baptist Church v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021 (D. Kan. Apr. 18, 2020), Defendants here also argue that Plaintiffs' requested TRO should be denied because it would alter the status quo. Their argument can be disposed of in the same manner as was done in *First Baptist Church*. As pointed out by the Court in that case, the "status quo" in this context refers to "the last peaceable uncontested status existing between the parties before the dispute developed." *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, 2012 WL 6930302, at *1 (10th Cir. Dec. 20, 2012) (citing *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, LLC, 562 F.3d 1067, 1071 (10th Cir. 2009)).

The last peaceable uncontested status between the parties was just prior to the enactment of the Order at issue, which did not contain the warrantless mandatory regime. Because the requested TRO would return the parties to that uncontested status, it would not alter the status quo and is not a disfavored injunction. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 798 (10th Cir. 2019) (the status quo was the parties' status before the challenged ordinance was adopted.)

4. **Neither "Exigency" nor *Jacobsen v. Massachusetts* Solves Defendants' Problems**

It is axiomatic that the government has the burden of proving an exception to the warrant requirement. See *Coolidge* at 454-55. Defendants have not even tried to meet their burden.

Exigency does not exist. As Plaintiffs point out, and Defendants apparently concede, Linn County has not had a positive COVID-19 test since March 28, 2020. Only 5 confirmed cases existed at the time of the Order, or approximately .05% of the county population. This is completely different from the government attaching a GPS tracker to a car to save a kidnapped child from being prostituted (See Doc. 15 at 32, Defendants relying on *United States v. Gillam*, 842 F.3d 801 (2nd Cir. 2016)), and wildly different than the "takings" case it cites. (Doc. 15 at 32, Defendants relying on *Miles v. D.C.*, 354 F. Supp 577, 580 (D.D.C. 1973), *aff'd* 510 F.2d 188 (D.C. cir. 1975).

*Perhaps* exigency would exist in the future, but it does not exist now, and Defendants cannot shirk the constitutional requirements because an exigency may exist at some point in the future. Exigency is a "now or never" situation, and does not presently exist.

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) does not save the warrantless mandatory regime either. As Plaintiffs already discussed, unlike the present case, "*Jacobson* did not expressly purport to interfere with rights secured by the Constitution." *First Baptist Church v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, at *4 (D. Kan. Apr. 18, 2020).

Defendants concede the Order lacks any precompliance review, and businesses do not currently have the opportunity to object to disclosure of the documents they are being forced to keep. This warrantless mandatory regime is "beyond all question, a plain, palpable invasion of rights secured by fundamental law[.]" *Id.*, quoting in part, *Jacobsen*.

In fact, because the Order *is so problematic*, the Defendants are trying to now claim it was intended to be voluntary. As noted by Attorney General Barr, in his Statement of Interest[2] in *Temple Baptist Church v. Greenville*, "there is no pandemic exception, however, to the fundamental liberties the Constitution safeguards.  Indeed, 'individual rights secured by the Constitution do not disappear during a public health crisis.'" Statement of Interest at 10 *citing In re Abbott*, --- F.3d ---, 2020 WL 1685929, at *6 (5th Cir. Apr. 7, 2020).

Defendants cannot use *Jacobson* to create a pandemic exception to the Constitution or the precompliance review process or the Fourth Amendment's warrant requirement.  Rather, they must operate under the guidelines directed in *Patel* and use precompliance review. However, because the Order did not do so, Defendants now scramble to claim the Order created a voluntary regime and any problems with the Order should merely be glossed over

---

[2] Available at https://www.justice.gov/opa/press-release/file/1273211/download.

10

because of the pandemic and *Jacobson*. This argument should fail, and constitutional principles be upheld.

**5.      Dr. Allen Does Not Have the Authority to Issue *This* Order**

Dr. Allen lacks the authority to issue <u>this</u> Order. Plaintiffs have challenged the entirety of the Defendants' mandatory warrantless regime. In particular, the Plaintiffs reject the mandatory warrantless mandatory regime imposed by the Order and the Order's indication that it can be criminally enforced.

While the Defendants attempt to re-create history by claiming the Order was intended to be "voluntary" despite the public representations to the contrary as well as the plain text of the Order, Defendant Allen lacks the authority to mandate through criminal enforcement that (1) individuals sign a list a businesses; (2) lists be maintained by businesses; and (3) the lists must be produced to health officials on demand as the Order clearly indicates is threatened.

As it is now apparent from the Defendants' response, Defendants rely primarily on KSA § 65-202 for broad authority to "use all known measures to prevent the spread of any such infectious, contagious, or communicable disease" to implement their warrantless mandatory regime. However, the Defendants ignore the fact that the Order's criminal enforcement provision cites KSA § 65-127 which states:

> Any person found guilty of violating any of the provisions of K.S.A. 65-118, 65-119, 65-122, 65-123 and 65-126, and any amendments thereto, or failing to comply with any requirements thereof shall be fined, upon conviction, not less than twenty-five dollars ($25) nor more than one hundred dollars ($100) for each offense.

Notably absent from the list of statutes that can be criminally enforced under KSA § 65-127 is KSA § 65-202. Therefore, the Defendants must rely solely on Defendant's authority under

11

KSA § 65-119 as his authority to criminally enforce his order that (1) individuals sign a list at a businesses; (2) lists be maintained by a businesses; and (3) the lists must be produced to health officials on demand under KSA § 65-127. KSA § 65-119 in its entirety indicates:

> (a) Any county or joint board of health or local health officer having knowledge of any infectious or contagious disease, or of a death from such disease, within their jurisdiction, shall immediately exercise and maintain a supervision over such case or cases during their continuance, seeing that all such cases are properly cared for and that the provisions of this act as to isolation, restriction of communication, quarantine and disinfection are duly enforced. The county or joint board of health or local health officer shall communicate without delay all information as to existing conditions to the secretary of health and environment. The local health officer shall confer personally, if practicable, otherwise by letter, with the person in attendance upon the case, as to its future management and control. The county or joint board of health or local health officer is hereby empowered and authorized to prohibit public gatherings when necessary for the control of any and all infectious or contagious disease.
>
> (b) Any disclosure or communication of information relating to infectious or contagious diseases required to be disclosed or communicated under subsection (a) of this section shall be confidential and shall not be disclosed or made public beyond the requirements of subsection (a) of this section or subsection (a) of K.S.A. 65-118, except as otherwise permitted by subsection (c) of K.S.A. 65-118.

The only relevant language in this statute that could arguably grant the authority of Dr. Allen to issue an Order mandating lists be signed, kept, and produced on demand is that he is "empowered and authorized to prohibit public gatherings when necessary for the control of any and all infectious or contagious disease." Obviously, this is a far cry from specifically granting the Local Health Officer the ability to create a new crime that consists of refusing to sign, maintain, or produce on demand a list of customers and clients. In fact, there is no specific power enumerated in Chapter 65 that allows a Local Health Officer to mandate individuals sign lists, businesses keep lists, and produce such lists on demand. Thus, the Defendant's cite to the broad language in KSA § 65-202 in order to justify their Order. However, given the text of

KSA § 65-127, such an Order *must* be voluntary and criminal penalties cannot be imposed both because it exceeds the Public Health Officer's statutory authority and violates the Fourth Amendment by imposing a warrantless list regime.  Plaintiffs reserve the right to amend the Complaint to seek relief as a Violation of Due Process and/or other claims, and pursue other causes of action based on Defendants assertions that they can use KSA § 65-202 as authority to criminally enforce their mandatory warrantless list regime.

Further, the Local Health Order's direction that law enforcement assist in the Order's execution is similarly flawed as it invokes KSA § 65-129b, involving Dr. Allen's power to order individuals into isolation or quarantine.  However, the warrantless list regime has no relation to the Local Health Officer's powers under KSA § 65-129b which specifically indicating KSA § 65-119 operates independently by stating "[n]otwithstanding the provisions" and referencing other statutory powers.  Accordingly, the Order may not hijack law enforcement assistance under the Local Health Officer's isolation/quarantine powers to enforce its warrantless mandatory regime as it attempts under a plain reading of the Order's language.

6. **This Strange Version of Contact Tracing Has Limited, if any, Merit**

Plaintiffs acknowledge the seriousness of COVD-19. But this strange and perverse form of contact tracing has apparently never been attempted. There is no scientific evidence this type of contact tracing will work. In fact, common sense suggests *this* type of tracing will *not* work. If people do not "buy-in" to the process, there is every reason to believe people will not provide real names, real phone numbers, et cet. This will, in turn, cause the Linn County Health Department to contact non-existent people.

Moreover, there is simply no way to determine, as the Order is currently written, whether the infected person was in close proximity to other people. This will cause the health department to attempt to reach out to everyone in the general vicinity. This will undoubtedly cause over and under inclusion of potentially infected patients. The Defendants' approached is half-baked and not likely to help in any significant way. Perhaps this is why, to Plaintiffs' knowledge, Linn County, Kansas is the only county that has attempted to impose this type of warrantless mandatory list regime on its citizens.

**7.  Conclusion**

Plaintiffs Jackie Taylor and Linda Jo Hisel request this Court grant their request for a temporary restraining order, allowing them to be free from Defendants' unconstitutional search and seizure regime with the threat of criminal enforcement if they do not comply.

Dated: 5/15/20

Kansas Justice Institute
By:  Samuel G. MacRoberts, 22781

_____
Samuel G. MacRoberts
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
Sam.MacRoberts@KansasJusticeInstitute.org
(913) 213-5018

Dated: 5/15/20

/s/ Ryan Kriegshauser
Ryan A. Kriegshauser, 23942
Kriegshauser Law, LLC
15050 W. 138th Street, Unit 4493
Olathe, KS 66063
ryan@kriegshauserlaw.us
(913) 303-0639